IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISTI L., on behalf of herself and )<br>her minor child, T.L.; CHRISTINA MILLS; )<br>PATRICK MURPHY; MARY H.; JANE KIHNE; )<br>KATHLEEN KIHNE; MORGAN MILLS )<br>SUE K., on behalf of her )<br>minor child, J.K., PETER H. on behalf )<br>his minor child, O.H.; LAURIE T. on behalf )<br>of her minor child, B.T.; )<br>and CHRISTOPHER MORRIS, )<br>                                      )<br>        Plaintiffs,             )<br>                                      )<br>        -vs-                      )<br>                                      )<br>NATIONAL AIR AND SPACE MUSEUM )<br>("NASM"), )<br>6th St. and Independence Avenue, SW )<br>Washington, D.C. 20560, )<br>                                      )<br>CHRISTOPHER BROWNE, )<br>in his official capacity as Director, NASM )<br>6th St. and Independence Avenue, SW )<br>Washington, D.C. 20560, )<br>                                      )<br>OFFICE OF PROTECTION SERVICES )<br>("OPS"), )<br>600 Maryland Avenue, SW )<br>Washington, D.C. 20024, )<br>                                      )<br>MARK WALLACE, )<br>in his official capacity as Director, OPS, )<br>600 Maryland Avenue, SW )<br>Washington, D.C. 20024, )<br>                                      )<br>JANE DOE 1, a fictitious name, )<br>individually and her official capacity as a )<br>police/security officer, OPS, )<br>600 Maryland Avenue, SW )<br>Washington, D.C. 20024, )<br>                                      )<br>JANE DOE 2, a fictitious name, )<br>individually and in her official capacity ) | Civil Case No. 1:23-cv-335<br><br>**COMPLAINT**<br><br>(Civil Rights Action under<br>First and Fifth Amendments and<br>42 U.S.C. § 2000bb-1) |

| | |
|---|---|
| as a police/security officer, OPS, | ) |
| 600 Maryland Avenue, SW | ) |
| Washington, D.C. 20024, | ) |
| | ) |
| JANE DOE 3, a fictitious name, | ) |
| individually and in her official capacity | ) |
| as a police/security officer, OPS, | ) |
| 600 Maryland Avenue, SW | ) |
| Washington, D.C. 20024, | ) |
| | ) |
| JOHN DOE 1, a fictitious name, | ) |
| individually and in his official capacity | ) |
| as a police/security officer, OPS, | ) |
| 600 Maryland Avenue, SW | ) |
| Washington, D.C. 20024, | ) |
| | ) |
| JOHN DOE 2, a fictitious name, | ) |
| individually and in his official capacity | ) |
| as a police/security officer, OPS, | ) |
| 600 Maryland Avenue, SW | ) |
| Washington, D.C. 20024, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Kristi L., on behalf of herself and her minor child, T.L.; Christina Mills; Patrick Murphy; Mary H.; Jane Kihne; Kathleen Kihne; Morgan Mills; Sue K., on behalf of her minor child, J.K.; Peter H. on behalf his minor child, O.H.; Laurie T. on behalf of her minor child, B.T.; and Christopher Morris. (collectively referred to as "Plaintiffs"), by undersigned counsel, bring this Complaint against Defendants National Air and Space Museum "NASM," Christopher Browne, in his official capacity as Director of NASM; Office of Protective Services ("OPS"); Mark Wallace, in his official capacity as Director, OPS; Jane Doe 1, in her official capacity and individual capacity as a police/security officer, OPS; Jane Doe 2, in her official capacity and individual capacity as a police/security officer, OPS; Jane Doe 3, in her official capacity and individual capacity as a police/security officer, OPS; John Doe 1, in his official capacity and individual capacity as a

police/security officer, OPS; and John Doe 2, in his official capacity and individual capacity as a police/security officer, OPS, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1. Those who oppose abortion have been the targets of an extraordinary amount of violence and vandalism, especially in the wake of the *Dobbs* decision on abortion. *See* Micaiah Bilger, *Radical Extremists Attacked 230 Churches, Pro-Life Groups in Wave of Pro-Abortion Violence in 2022*, LifeNews.com (Dec. 30, 2022), available at https://www.lifenews.com/2022/12/30/radical-extremists-attacked-230-churches-pro-life-groups-in-wave-of-pro-abortion-violence-in-2022/ (listing 241 incidents in 2022 alone, with links to coverage).

2. Plaintiffs are students, parents and/or chaperones of Our Lady of the Rosary Church and School in South Carolina.

3. It is Plaintiffs' sincerely held religious belief that unborn babies are created in the image of God, and should be protected.

4. It is Plaintiffs' sincerely held religious belief that they have a duty to speak and peacefully advocate on behalf of the unborn babies.

5. On or about January 19, 2023, Plaintiffs traveled to Washington, D.C., to participate in the March for Life event occurring on January 20, 2023.

6. On January 20, 2023, Plaintiffs participated in the March for Life event. All Plaintiffs wore blue hats with the inscription, "Rosary Pro-Life."

Here:



7. The expressive conduct at issue in this case is the passive wearing of these hats, which contained only the school's name, "Rosary," and the term, "Pro-Life."

8. The Rosary is "[a] devotional prayer, mental and vocal, honoring the Blessed Mother of God. It is said on a string of beads made up of five sets each of one large and ten smaller beads, called decades." John Hardon, S.J., "Rosary," *Catholic Dictionary* (2013). "[I]t represents a most effective means of fostering among the faithful that commitment to the contemplation of the Christian mystery." St. John Paul II, "On the Most Holy Rosary" (*Rosarium Virginis Mariae*), para. 5.

9. Following their participation in the March for Life event, Plaintiffs visited the NASM whereby all Plaintiffs were subjected to a pattern of ongoing misconduct by at least five different staff, personnel, employees and/or security guards of NASM including Defendants Jane Does and John Does, which included targeting, harassment, discrimination and, ultimately, eviction from NASM simply because they wore blue hats with the inscription, "Rosary Pro-Life."

10. This case seeks to protect and vindicate Plaintiffs' fundamental and statutory rights under federal law, the First and Fifth Amendments to the United States Constitution, and the Religious Freedom Restoration Act ("RFRA").

11. Plaintiffs seek the relief set forth in their below Prayer for Relief, including declaratory and injunctive relief relating to Defendants' violation of their clearly established constitutional and statutory rights as set forth in this Complaint.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1346.

13. This Court has authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000bb-1, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

14. This Court has authority to award Plaintiffs their reasonable costs and attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside and/or perform their official duties in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## THE PLAINTIFFS

16. Plaintiffs Kristi L. and T.L. are citizens of the United States and residents of South Carolina. Kristi L. brings this action on behalf of herself and her minor child, T.L., age fifteen. Kristi L. and T.L. are Catholic and were visiting NASM with a group from their school, Our Lady of the Rosary School, on the date of the events alleged herein.

17. Plaintiff Christina Mills is an adult citizen of the United States and a resident of South Carolina. Christina Mills is Catholic and was visiting NASM with a group from her child's school, Our Lady of the Rosary School, on the date of the events alleged herein.

18. Plaintiff Mary H. is an adult citizen of the United States and resident of South Carolina. Mary is Catholic and was visiting NASM as a chaperone for Our Lady of the Rosary School on the date of the events alleged herein.

19. Plaintiff Peter H. brings this action on behalf of his minor child, O.H., age sixteen. Both Peter H. and O.H. are citizens of the United States and residents of South Carolina. O.H. is Catholic and was visiting NASM with a group from her school, Our Lady of the Rosary School, on the date of the events alleged herein.

20. Plaintiff Laurie T. brings this action on behalf of her minor child, B.T., age fifteen. Both Laurie T. and B.T. are citizens of the United States and residents of South Carolina. B.T. is Catholic and was visiting NASM with a group from her school, Our Lady of the Rosary School, on the date of the events alleged herein.

21. Plaintiff Patrick Murphy is an adult citizen of the United States and resident of South Carolina. Patrick Murphy is Catholic and was visiting NASM as a student with his school, Our Lady of Rosary School, on the date of the events alleged herein.

22. Plaintiff Jane Kihne is an adult citizen of the United States and a resident of South Carolina. Jane Kihne is Catholic and was visiting NASM as a student with her school, Our Lady of the Rosary School, on the date of the events alleged herein.

23. Plaintiff Kathleen Kihne is an adult citizen of the United States and a resident of South Carolina. Kathleen Kihne is Catholic and was visiting NASM as a student with her school, Our Lady of the Rosary School, on the date of the events alleged herein.

24. Plaintiff Morgan Mills is an adult citizen of the United States and a resident of South Carolina. Morgan is Catholic and was visiting NASM as a student with her school, Our Lady of the Rosary School, on the date of the events alleged herein.

25.     Plaintiff Sue K. and J.K. are citizens of the United States and residents of South Carolina. Sue K. brings this action on behalf of her minor child, J.K., age seventeen. J.K. is Catholic and was visiting Washington D.C. with his school, Our Lady of the Rosary School, on the date of the events alleged herein.

26.     Plaintiff Christopher Morris is a citizen of the United States and resident of South Carolina. Christopher Morris is a Catholic and was visiting Washington, D.C., with his children's school, Our Lady of the Rosary School, on the date of the events alleged herein.

## THE DEFENDANTS

27.     Defendant NASM is a government agency that was established by an Act of Congress in 1946. Approximately 70 percent of NASM's funding comes from federal appropriations to support its operations. As a federal government entity, NASM and its officers, agents and employees are mandated to comply with the First and Fifth Amendments to the U.S. Constitution and RFRA.

28.     NASM is the largest of the Smithsonian Institution's museums. Smithsonian Institution is a recipient of federal funding and received more than $1 billion dollars of federal funding in 2022.

29.     As part of the Smithsonian, NASM purports to abide by a Smithsonian 2027 policy or plan that calls for "an inclusive, welcoming, and safe work environment in which everyone can bring their best to their work in service to the public."

30.     Defendant Christopher Browne is the John and Adrienne Mars Director of the NASM and is responsible for administration and enforcement of rules, regulations, policies, procedures, and/or practices at NASM. He is sued only in his official capacity.

31.     Defendant Office of Protective Services ("OPS") is a government agency responsible for providing security and law enforcement for the Smithsonian Institution's twenty-one museums, including NASM.

32. Defendant Mark Wallace is the Director of OPS and has been delegated the authority to oversee the hiring and designation of personal security and police to provide necessary security through the performance of law enforcement duties for the Smithsonian Institution, including NASM.

33. Defendant Wallace is responsible for enforcing the rules, regulations, policies, procedures, and/or practices of OPS and NASM. Defendant Wallace is sued only in his official capacity.

34. Defendant Jane Doe 1 (a fictitious name) is an OPS police/security officer, and at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of OPS and NASM. Defendant Jane Doe 1 is sued in her official capacity and her individual capacity for acts and omission occurring in connection with the duties performed on behalf of OPS and NASM.

35. Defendant Jane Doe 2 (a fictitious name) is an OPS police/security officer and, at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of OPS and NASM. Defendant Jane Doe 2 is sued in her official capacity and her individual capacity for acts and omission occurring in connection with the duties performed on behalf of OPS and NASM.

36. Defendant Jane Doe 3 (a fictitious name) is an OPS police/security officer, and at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of OPS and NASM. Defendant Jane Doe 3 is sued in her official capacity and her individual capacity for acts and omission occurring in connection with the duties performed on behalf of OPS and NASM.

37. Defendant John Doe 1 is an OPS police/security officer, and at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of

OPS and NASM. Defendant John Doe 1 is sued in his official capacity and his individual capacity for acts and omission occurring in connection with duties performed on behalf of OPS and NASM.

38.     Defendant John Doe 2 is an OPS police/security officer with the authority to enforce the rules, regulations, policies, procedures, and/or practices of OPS and NASM. Defendant John Doe 2 is sued in his official capacity and in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of OPS and NASM.

## FACTUAL ALLEGATIONS

39.     Plaintiffs traveled to Washington, D.C., on or about January 19, 2023, as a group from Our Lady of the Rosary Church and School in Greenville, South Carolina, to attend the 50th Annual National March for Life.

40.     As Catholic Christians, Plaintiffs believe they have a moral obligation to teach about and speak up for the equal dignity of all people, from the womb to the tomb. Plaintiffs' beliefs compel them to speak out against abortion through prayer, education and support of pro-life causes whenever they have an opportunity to do so.

41.     Plaintiff's religious beliefs motivated their decision to attend the 50th Annual March for Life event and to express their beliefs by wearing matching blue hats containing the inscription, "Rosary Pro-Life."

42.     After the March for Life had concluded, the group separated into smaller groups so that the students could visit different museums along the National Mall. Plaintiffs all decided to visit NASM.

43.     NASM is located at 6th Street and Independence Ave., SW, Washington, DC 20560. It is open to the public every day except December 25 from 10:00 am to 5:30 pm EST.

44.     Between approximately 3:45 and 4:10 pm on January 20, 2023, Plaintiffs arrived at NASM for their scheduled visits.

45. Plaintiffs Mary H., Christina Mills, Morgan Mills, O.H., and B.T. entered NASM between 3:45 and 4:00 pm. Upon entering, they were required to go through security and to present their entrance tickets to be scanned by security personnel.

46. As they went through security, Plaintiffs Mary H., Christina Mills, Morgan Mills, O.H., and B.T. were confronted by two security guards, Defendant Jane Doe 1 and Defendant John Doe 1, who informed them that they must remove their pro-life hats in order to pass through security. All Plaintiffs complied with this order.

47. At the time Defendants Jane Doe 1 and John Doe 1 gave this order to Plaintiffs, Plaintiffs Mary H., Christina Mills, Morgan Mills, O.H., and B.T. believed that the demand that they remove their hats was a required security measure for purposes of completing the screening process. They peacefully complied with the demand.

48. Once inside NASM, Plaintiff O.H. put her hat back on.

49. While inside NASM, Plaintiff B.T. observed a male visitor unrelated to their group walking freely around the museum wearing a rainbow PRIDE mask as an expressive statement.

50. Meanwhile, Plaintiffs Jane K., Kathleen K., Patrick M., and J.K. entered NASM at approximately 4:00 pm. Upon entering, they were required to go through security and to present their entrance tickets to be scanned by security personnel.

51. As they went through security, Plaintiffs Jane K., Kathleen K., Patrick M., and J.K. were confronted by two security guards, Defendant Jane Doe 1 and Defendant John Doe 1, who informed them that they must remove their pro-life hats in order to pass through security. All Plaintiffs complied with this order.

52. At the time Defendants Jane Doe 1 and John Doe 1 gave this order to Plaintiffs, Plaintiffs Jane K., Kathleen K., Patrick M., and J.K. believed that the demand that they remove their hats was a required security measure for purposes of completing the screening process.

53. Once inside NASM, Plaintiffs Jane K., Patrick M., and J.K. put their hats back on.

54. Plaintiffs Kristi L. and T.L. entered NASM at approximately 4:09 pm. Upon entering, they were required to go through security and to present their entrance tickets to be scanned by security personnel.

55. As they went through security, Plaintiffs Kristi L. and T.L. were confronted by two security guards, Defendant Jane Doe 1 and Defendant John Doe 1, who informed them that they must remove their pro-life hats in order to pass through security. All Plaintiffs complied with this order.

56. Plaintiff Kristi L. was specifically told by John Doe 1 to place her hat in her pocket. Plaintiff Kristi L. complied with this order.

57. At the time Defendants Jane Doe 1 and John Doe 1 gave this order to Plaintiffs, Plaintiffs Kristi L. and T.L. believed that the demand that they remove their hats was a required security measure.

58. Once inside NASM, Plaintiffs T.L. and Kristi L. observed several other NASM visitors unrelated to their group walking freely around the museum with hats, beanies and other expressive attire, including a woman wearing a PRIDE face mask as an expressive statement. After this observation, Plaintiff T.L. put his hat back on.

59. At approximately 4:26 pm, several students of Our Lady of the Rosary Church and School, including Plaintiffs Patrick M., Kathleen K., Jane K., and J.K. entered the Wright Brother's Exhibit located on the first floor of the NASM.

60. Shortly after entering the exhibit Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and one other student not named in this complaint, walked by Defendant Jane Doe 2 and Defendant Jane Doe 3 who stopped Plaintiffs Patrick M., Kathleen K., Jane K., and J.K. and instructed them to remove their hats.

61. One of the students informed Defendant Jane Doe 2 and Defendant Jane Doe 3 that they had to wear their hats in order to be identified as a group. Defendant Jane Doe 2 started to say something more, but was stopped by Defendant Jane Doe 3, and Defendant Jane Doe 3 let them continue through the exhibit.

62. As Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and their fellow student walked by Defendant Jane Doe 2 and Defendant Jane Doe 3 to continue into the exhibit, the Does used expletives in reference to the students, some of whom are minors, including J.K., stating: "The f—king pro-life. What a bunch of s—t." This comment was heard by one of the students who relayed that comment to Plaintiffs Patrick M., Kathleen K., Jane K., J.K.

63. At approximately 4:40 pm, several students of Our Lady of the Rosary School, including Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L., were sitting against the escalator wall outside of the Wright Brothers Exhibit when they were once again approached by a NASM security officer dressed in dark clothing and black beanie/hat. Defendant John Doe 2, approached the students and had a big grin on his face and was rubbing his hands together as he said, "Y'all are about to make my day."

64. Defendant John Doe 2 continued to address Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L., along with their fellow students by stating, "You've been told multiple times to take your hats off, and you have not taken them off. You need to take them off or leave."

65. Plaintiffs Jane Kihne and T.L. pointed out other NASM visitors unrelated to Plaintiffs' group who were wearing hats and questioned why they were allowed to wear hats while Plaintiffs were being ordered to remove theirs.

66. Defendant John Doe 2 stated that Plaintiffs' hats were "political statements," and that they were "not promoting equality."

67. Plaintiff Jane Kihne responded by pointing out other individuals freely moving about the museum wearing expressive statements, such as PRIDE masks, as well as beanies and other head attire.

68. Plaintiffs told Defendant John Doe 2 that they had a constitutional, First Amendment right to wear their hats. Defendant John Doe 2 stated, "I'm not taking away your First Amendment rights," and that the museum is a "neutral zone."

69. Defendant John Doe 2 then proceeded to inform Plaintiffs that they must remove their hats because the museum was a "neutral zone," and that the First Amendment "does not apply here."

70. In addition, Plaintiffs informed Defendant John Doe 2 that they needed to wear their hats so that they could be identified as part of their school group. Defendant John Doe 2 stated: "You don't need them on your heads to identify each other." Plaintiffs also informed Defendant John Doe 2 that they were just about to leave NASM. Defendant John Doe 2 stated in response: "As long as you are in the building, you don't need it on." Even as the Plaintiffs walked towards the door, Defendant John Doe 2 stated, "You don't need your hats on to leave the building."

71. Defendant John Doe 2 ignored Plaintiffs' protests and instructed Plaintiffs to leave the museum. As the Plaintiffs exited NASM, Defendant John Doe 2 clapped his hands together in a dismissive clapping and shooing manner.

72. Plaintiff O.H. was in a separate part of the building, but heard Defendant John Doe 2 "yelling" at her fellow students: "Y'all are about to make my day!" She moved locations and observed and heard Defendant John Doe 2 telling Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L. "You were told to take off your hats!"

73. Plaintiff O.H also observed Defendant John Doe 2's dismissive hand gestures as Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L. exited NASM. Plaintiff O.H. exited NASM shortly after to join Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L. on the steps outside.

74. Similarly, Plaintiffs Christina Mills and Morgan Mills observed Defendant John Doe 2 gesticulating at Plaintiffs Patrick M., Kathleen K., Jane K., J.K. and T.L. Plaintiff Morgan Mills heard Defendant John Doe 2 "yelling" at Plaintiffs Patrick M., Kathleen K., Jane K., J.K. and T.L. and stating, "Y'all are about to make my day!"

75. Plaintiffs Christina Mills and Morgan Mills also observed Defendant John Doe 2's dismissive hand gestures as Plaintiffs Patrick M., Kathleen K., Jane K., J.K., and T.L. exited NASM.

76. At approximately 5:15 pm, Plaintiff Christopher Morris arrived at NASM in search of two students who were missing from the group.

77. Plaintiff Christopher Morris passed through security without issue and entered NASM to continue his search.

78. Approximately 3 minutes after entering NASM, Plaintiff Christopher Morris and others in his group were approached by Defendant John Doe 2 who said: "Excuse me. You need to take off your hats. We are a museum that promotes equality, and your hats do not promote equality."

79. Because Plaintiff Christopher Morris was deeply concerned for the safety and well-being of the two missing students, he and the rest of the group that were with him took off their hats so that they would not be removed from the museum.

80. None of the Plaintiffs' expressive conduct involved verbal or disruptive speech, protest, or signs. Instead, the expressive conduct at issue consisted only of the wearing of the "Rosary Pro-Life" hats.

## CAUSES OF ACTION

### COUNT I
### (Violations of the First Amendment – Freedom of Speech)

81. The allegations of Paragraphs 1 through 80 above are incorporated by reference herein as if fully set out.

82. The First Amendment protects private speech and expression from government interference or restriction when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

83. Plaintiffs' speech and expression enjoys First Amendment protection.

84. Defendants unlawfully deprived Plaintiffs of their First Amendment rights to engage in protected speech and expression in violation of the Free Speech Clause of the First Amendment.

85. Defendants' restriction on Plaintiffs' speech is content and viewpoint-based and demonstrates a concerted effort to single out, embarrass, intimidate, exclude, and ultimately silence the message expressed by Plaintiffs in wearing their "Rosary Pro-Life" hats.

86. None of the Plaintiffs' expressive conduct involved verbal or disruptive speech or protest, or signs. Instead, the expressive conduct at issue consisted only of the wearing of the "Rosary Pro-Life" hats.

87. Defendants' conduct constitutes retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of their protected speech.

88. Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

89. Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violation of their constitutional rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

## COUNT II
### (Violation of Fifth Amendment – Equal Protection)

90. The allegations of Paragraphs 1 through 80 above are incorporated by reference herein as if fully set out.

91. The Fifth Amendment to the United States Constitution protects persons against the deprivation of life, liberty, or property without due process of the law and forbids the federal government from denying the equal protection of the laws.

92. The Fifth Amendment to the United States Constitution guarantees persons the right to be free from illegal discrimination and selective, viewpoint-based scrutiny and enforcement.

93. Defendants unlawfully deprived Plaintiffs of their Fifth Amendment rights by preventing Plaintiffs from enjoying the museum and silencing Plaintiffs to prevent them from expressing a message based on content and viewpoint, because Defendants found their views unacceptable.

94. None of the Plaintiffs' expressive conduct involved verbal or disruptive speech or protest, or signs. Instead, the expressive conduct at issue consisted only of the wearing of the "Rosary Pro-Life" hats.

95. Defendants caused Plaintiffs to be treated differently than other similarly situated patrons to the museum.

96. The disparate treatment of Plaintiffs based on their viewpoints was a result of a discriminatory purpose on the part of Defendants.

97. Defendants' disparate treatment of Plaintiffs based on their viewpoints is not rationally related to any legitimate governmental interest.

98. Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

99. Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violation of their constitutional rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

## COUNT III
### (Religious Freedom Restoration Act)

100. The allegations of Paragraphs 1 through 80 above are incorporated by reference herein as if fully set out.

101. The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4 ("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

102. RFRA broadly defines "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

103. The Supreme Court has explained that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citing *Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 877 (2014)).

104. None of the Plaintiffs' religious expressive conduct involved verbal or disruptive speech or protest, or signs. Instead, the religious expressive conduct at issue consisted only of the wearing of the hats bearing the religious message, "Rosary Pro-Life."

105. Plaintiffs' sincerely held religious beliefs require them to publicly express their opposition to abortion. Plaintiffs' compliance with these beliefs is a religious exercise.

106. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint imposes a substantial burden on Plaintiffs' religious exercise in violation of RFRA.

107. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint does not further any compelling governmental interest.

108. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint is not the least restrict means to accomplish any permissible government interest.

109. Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

110. Plaintiffs have no adequate remedy at law.

111. Plaintiffs have and will continue to suffer irreparable injury.

112. Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violations of their rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

## **PRAYER FOR RELIEF**

Plaintiffs repeat and re-allege all allegations set forth above and incorporate those allegations herein by reference, and Plaintiffs request that this Court grant them the following relief and enter final judgment against Defendants and in favor of Plaintiffs:

A. Declare Defendants' actions violated Plaintiffs' rights under the First Amendment to the United States Constitution;

B. Declare Defendants' actions violated Plaintiffs' rights under the Fifth Amendment to the United States Constitution;

C. Declare Defendants' actions violated Plaintiffs' rights under the Religious Freedom Restoration Act;

D.      Issue an injunction enjoining Defendants, and all those in active concert with them, from unlawfully targeting Plaintiffs, for disparate treatment and particular scrutiny based on content and viewpoint or association;

E.      Award to Plaintiffs damages against Defendants Jane Does and John Does in their individual capacities for the past loss of Plaintiffs' rights protected under the Religious Freedom Restoration Act;

F.      Order Defendants to conduct appropriate training of employees, subject to the Court's approval, such that Defendants' employees' conduct complies with federal law and the United Stated Constitution;

G.      Award to Plaintiffs the costs of this action and reasonable attorney fees; and,

H.      Award such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED: February 6, 2023.

Respectfully submitted,

THE AMERICAN CENTER FOR LAW AND JUSTICE

JAY ALAN SEKULOW
   (D.C. Bar No. 496335)
JORDAN SEKULOW
   (D.C. Bar No. 991680)
STUART J. ROTH
   (D.C. Bar No. 475937)
CHRISTINA (STIERHOFF) COMPAGNONE
   (D.C. Bar No. 1657929)
OLIVIA F. SUMMERS
   (D.C. Bar No. 1017339)

/s/ *Benjamin P. Sisney*
BENJAMIN P. SISNEY
   (D.C. Bar No. 1044721)
201 Maryland Avenue, NE

19

Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: bsisney@aclj.org

ABIGAIL SOUTHERLAND
   (TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
Email: asoutherland@aclj.org

EDWARD L. WHITE III
   (D.D.C. Bar No. TX0116)
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Tel. 734-680-8007
Fax. 734-680-8006
Email: ewhite@aclj.org